May it please the Court, Brian Goldman for Appellant Logan Volpicelli. And if I may, I'd like to reserve five minutes for rebuttal. The statute of limitations on a third-party action for wrongful levy is subject to equitable tolling because Congress never suggested otherwise. This Court has already held twice that this time limit is tollable, and those decisions both control this case and remain good law. That's because the Supreme Court has now confirmed two presumptions that weigh in favor of tolling. First, courts will treat a procedural rule as non-jurisdictional in character absent a clear statement by Congress to the contrary. And here, there's no clear statement that Section 6532C is jurisdictional. Second, Congress is presumed to intend equitable tolling to apply to statutes of limitations. And here, nothing rebuts that presumption. On the contrary, there's every reason to think that when Congress opened the United States to suit and created a new remedy for the innocent victims of the government's tax collection errors, it intended tolling to apply like always. I'd like to focus on capital tracing and supermail cargo, because I think those really do resolve this case. Five years after Irwin, this Court applies Irwin to Section 6532C and reaches two holdings. First, that Section 6532C is non-jurisdictional. The Court says that in capital tracing. And second, that it may be equitably tolled. In capital tracing, the Court actually proceeds to determine that tolling is appropriate on the facts of the case. And then a couple months later, the Court decides supermail cargo and says, quote, our recent decision in capital tracing specifically holds that equitable tolling may be applied to extend the period for bringing a wrongful levy claim against the government under Section 7426. The Court in supermail cargo then concludes that because the case arises in a 12b-6 posture, it can't determine whether tolling is appropriate on the facts of the case and remands for further proceedings, which is precisely the relief that we seek here. Those decisions are both on the books. This Court has not revisited that question in the time since, but they remain good law, and they are in no way altered by subsequent decisions. More recent decisions of the Supreme Court, if anything, confirm them. So maybe, I mean, Brokamp seems the most likely candidate for intervening an authority that might have changed the state of play. So maybe you can address why you don't think that case is a game changer? Certainly, Judge Wofford. Brokamp is an application of Irwin to a different provision, Section 6511. And what Brokamp shows is that Irwin is indeed a rebuttable presumption. There are circumstances under which Congress can evidence its intent to not have tolling apply. But the Court looked to four factors that, quote, taken together convinced the Court that Congress did not intend equitable tolling to apply under Section 55 --" pardon me, under Section 6511. Those circumstances were the detailed technical language of Section 6511, which aren't shared by Section 6532C, this unprecedented substantive tolling that would be required, which is not the case here, the very specific exceptions for other external circumstances that Section 6511 provided, which, again, we don't have here. And finally, what would seem to be driving much of the Court's analysis was the grave administrative concerns it had about allowing equitable tolling on a time limit that governs the 200 million tax returns, 90 million refund requests that taxpayers file every year. Well, here we're dealing with a scheme that is a millionth the size of that when you look at the fact that only about 40 such claims are filed in court every year. And so Brokamp lists all those factors because those were the ones that were dispositive. And we know that because the Supreme Court then in Holland cited each of those factors to distinguish Brokamp and hold that the statute of limitations under AEDPA is subject to equitable tolling. So the Court wasn't just piling on in Brokamp. It needed each of those factors to reach its conclusion. Here we have a statute of limitations that in nearly all respects resembles the statute of limitations under AEDPA that the Court deemed tollable in Holland. Really, all that Section 6532C and Section 6511 have in common is that they both appear in the tax code. But that alone doesn't mean that tolling can't apply. The Court didn't purport in Brokamp to hold that tolling is never available under tax law. And there's no reason to think that it would have intended that. These inquiries are necessarily statute-specific ones because they're ultimately aimed at determining whether Congress intended tolling to apply. Sotomayor, should we wait for the Supreme Court to decide Wong v. Beebe? I don't think that's necessary, Judge Fletcher. Wong v. Beebe, of course, concerns the FTCA, as does June v. United States. And as I just said, in these cases, the Court is looking to determine congressional intent that's necessarily a statute-specific inquiry. And so indeed, if you look at the Solicitor General's briefs that were filed just a few weeks ago in Wong and June, they are highly specific and highly focused on the text and history of the FTCA. So those cases are poised to be applications of these same principles to that statute as opposed to modifications of those principles. I guess I read the briefs a little differently. I can't remember now. I'm blanking on the name of the case that they would like to go back to. You'll know what it's the 1950s 1957, I think. From Soriano? Yes. If I guess I read the government as saying, look, you've gotten, you, the Supreme Court, have gotten way off track from where we started in Soriano. You need to go back to that. And if we did, I mean, if the Court did, it might well, you know, significantly backtrack on Irwin. That's for sure, right? Wouldn't that substantially undercut most of the argument that you presented to us this morning? If that were the case, I guess I read the briefs differently, and I certainly don't want to litigate the government's litigating position in Wong and June, but I read the government's brief to acknowledge quite candidly that Irwin worked to see change in the law. The government acknowledges that Irwin adopted a new and very different approach to sovereign immunity in these questions, and the SG appears to try to set that And I think, if anything, that's really a tacit acknowledgment of our argument here. Let me just, am I right in thinking that this statute that we're looking at was enacted right around 66? Right. 1966. Okay. So why wouldn't Congress have legislated against the backdrop of Soriano, which I just took a look at Soriano again this morning, and boy, if that rule applied here, I think you would probably be out of luck. And so in terms of the timing, why, if the Court were to announce, you know, some kind of a principle that said, at least for statutes that were enacted during this time frame, Congress probably had the Soriano rule in mind, wouldn't that undermine your position here? So two answers to that, Judge Wofford. First, I don't think that's what the Court is at all poised to do in Wong and June, because that's not what the SG is making a much narrower argument, painting the FTCA as the statutory descendant of the Court of Claims Act to try to tap into the line of cases leading to John R. Sand. But to answer that question, Irwin is not by its terms a prospective-only rule. Irwin applies equally to statutes that predate the decision in 1990, and we know that from Irwin itself. Irwin applied equitable tolling to Title VII under the Civil Rights Act, which was enacted in 1964, two years before this statute. And the reason that it works forwards and backwards is that the presumption in favor of equitable tolling is far older than Irwin. It goes back to before the merger of law and equity, and the Court in Young, when it discusses Hornbook Law, is citing cases going back into the 1800s. And what Irwin – Irwin's only innovation was to say that that same longstanding presumption that operates in private litigation applies equally to suits against the government. So there's no reason – and the Court announces that as an interpretive principle of what Congress should be understood to intend. So Irwin, I think, says to all statutes, rather than doing this case-by-case determination that's caused uneven results in the law. We've ended up with. That's why I'm saying, to me, the Supreme Court is at some point going to realize, boy, the promise of Irwin never was realized. Maybe we need to come up with a better regime. I guess I don't think so, Judge Olifer. I think the Court has actually reached a rather stable position in this line of cases, where the Court understands that in the end it's interpreting a statute. The question is what Congress intended. That's governed by presumptions as well as the ordinary tools of statutory construction, but in the end it's interpreting a statute. And so when there is a century's worth of precedent, as the Court put it in Bowles v. Russell, when there's a long line of cases going back to the revised statutes in the 1860s, as there was in John R. Sand, the Court's going to say, as a matter of statutory stare decisis, we will adhere to that, we will understand that Congress has accepted our interpretations and stick with those, and so it – but that's a pretty narrow set of cases where it's a direct line of statutes that have resulted in one that the Court is now treating as jurisdictional. In every other context, and the Court has had, you know, a half dozen of these cases in the last few years, in every other context, the Court has said, no, we are applying a bright-line rule now that these statutes are presumptively non-jurisdictional and subject to tolling. So I'm going to stop there, if I could reserve the remainder of my time. Thank you. Ginsburg. John Oppenheimer for the United States. Why don't you just give the kid his money? Well, he has to file a timely claim in order to get his money, or perhaps he could sue the relatives of his who misappropriated the checks. Opposing counsel never bothers to explain why money that was his was made payable to his father. Maybe he has a suit against his father. I don't – we don't know. Opposing counsel vastly overstates the significance of capital tracing. This Court's law is not as clear-cut as opposing counsel would have this Court believe before capital tracing was decided. There was Meraziti v. Thorpe cited by the amicus brief. Now, that was not a direct holding that – but the district court held that – dismissed an action for wrong – a wrongful levy action for lack of jurisdiction. This Court affirmed it on grounds other than that. But then – so in light of that, though, capital tracing is certainly not clear-cut. And then in Wong v. Beebe, this Court made it quite clear that equitable tolling isn't simply one question. It's a two-prong inquiry. The first question is, is the statute jurisdictional? And if it's so, then there's no equitable tolling. And then the second question is, does the equitable tolling, if it's not jurisdictional, does the equitable tolling presumption apply? And when this Court decided Wong v. Beebe, it specifically discussed the Supreme Court's 2008 decision in John R. Sand and Gravel, which this Court did not have the benefit of in capital tracing, and the subsequent decision of Supermail Cargo. So I would say that John R. Sand and Gravel and Brock Camp significantly changed the landscape of – significantly changed the landscape in terms of whether the wrongful levy statute of limitation could be equitably tolled. And in light of these Supreme Court decisions, this Court can – can reconsider this issue anew. In 2000 – Roberts, let me ask you about Brock Camp, at least. I mean, you heard your opponent's discussion of that case. That sounded pretty convincing to me. I mean, what is your response to – in terms of – not whether if we were looking at this fresh today, right, but how – I don't see how I – we can start with our prior 1995 decisions, look at Brock Camp, and say somehow that as a three-judge panel, we have the power to disregard them. I just don't see Brock Camp as having that kind of an effect. But if you disagree, I'd like to hear what you have to say on that. Well, I would say John R. Sand and Gravel certainly, taken together with Wong v. Beebe, do. In John R. Sand and Gravel, the Supreme – that's a 2008 decision. The Supreme Court recognized a category of jurisdictional statutes who are – whose time limits are more absolute than most. And it listed three – three system-related goals that were significant. And for each of these goals, it listed one Supreme Court case. Two of them were Supreme Court cases. Surprisingly, Brock Camp was one of them. So the Supreme Court seems to be saying in John R. Sand and Gravel that, you know, Brock Camp involved a jurisdictional statute, although you read Brock Camp, you don't see it. But the third one is United States v. Dahm, which is another Supreme Court case in which the Supreme Court expressly held section 6511 of the code, namely the timely filing of a claim for refund as a jurisdictional statute. So one of the few statutes the Supreme Court has ever held as jurisdictional is 6511. Okay. So it's in the tax code. Great. Right. But beyond that, I have to agree with your opponent. I don't see any similarity between our statute and 6511 beyond the fact that they happen to both be tax statutes. Well, there are several similarities. First of all, they both contain explicit exceptions to their application to which the phrase expressio unius exquisio alternaturius applies. I would also have to point out, if you're dealing with equitable tolling and not the jurisdictional issue, if you're just looking at the Irwin equitable tolling presumption, opposing counsel goes to great lengths to point out that Brock Camp was limited by the Congress right after it was enacted by the enactment of 6511H, which specifically provides that the period specified in 6511A, B, and C are suspended during the period that an individual is financially disabled. Well, Congress had before it the whole area of equitable tolling, and it could have enacted an equitable tolling provision applicable to the whole internal revenue code. In other words, instead of just making this one, you know, tolling provision applicable to 6511, it could have made it applicable to any periods of limitation in the internal revenue code, such as the period of limitation for wrongful levy, the period of limitation to bring a notice to sue in the tax court to file a petition for determination of deficiency. There are other time limits in 7433 and 7432 for bringing an action for wrongful collection activities, but yet Congress very carefully crafted this equitable tolling for this one statute. Let me just hear you. Go ahead. I just want to know, the argument that you're making now is that Congress should have passed a statute which applied to everything, or is that what you're suggesting? It could have, but it did not. It could have. All right. Go on. And since it did not, we have to say expressio unius exclusio ulterioris. Oh, okay. In other words, I know what it means. Pardon? I know what it means, yes. Expression of one excludes the other. I just, well, I once had to learn how to speak Latin, but that was years ago, and it didn't have a California accent with it. Anyway, the ‑‑ it just seems to me that what you're doing is suggesting that Congress makes sense out of the code, and that's an impossibility. They'll never make sense out of it unless they go back and redo the whole damn thing. Well, Congress knows how to enact a generally applicable statute. For example, in Section 7502, it says timely mailing is timely filing. That applies to tax returns. It applies to filing a petition for redetermination in the tax court. It applies to filing a notice of appeal from a loss in the tax court. So if Congress wanted to enact a generally applicable tolling provision, it could have done it the same way it enacted a generally applicable timely mailing as timely filing provision. So I would say that if you're talking about the Irwin presumption, there is as good a reason to say the presumption is that the presumption has been rebutted here as it has been rebutted in Brockcamp. If you talk about the content ‑‑ I have trouble seeing the ‑‑ I guess I'm on board with the sentiment expressed by Judge Watford with respect to Brockcamp. That's a statute dealing with refunds. It is quite complex. It's got lots of provisions dealing with tolling, although because it's jurisdictional, we don't call them tollings. It's exceptions to the operation of the jurisdictional prohibition. Justice Breyer is very clear that Congress would have very good reasons not to do equitable refunds that number in the tens of thousands every year. Here we're talking about a statute that does not have all those complex exceptions to it, does not have all the emphatic wording, and maybe just as important, and I'll pick up on Justice Breyer's opinion in Brockcamp, the number of claims you're going to get under this statute, which is to say third parties claiming wrongful seizure, that's just minuscule by comparison. So I don't see that Brockcamp tells us very much, except that this case is different. Well, the statutes are not identical, but I would say they are more similar than they are different, plus if you look at one of the factors that Brockcamp tells us to look at is the context of the statute. If you look at the statutes at large, or the original statute, Section 110A, it adopts Section 7426, which is the wrongful levy statute. Section 110B is the, it's what's now codified as 6532C, which is the statute of limitation. So it's quite clear that when Congress enacted the statute, it, you know, it enacted Section, what is now codified as 6532C, as a limitation on the waiver of sovereign immunity contained in what is 110A of the original statute. And in their brief, opposing counsel cites a part of the statutes at large that pertains to an entirely different section than the section we're dealing with. This, they refer to several pages after the actual enactment of this statute. And the statute they're referring to is 28 U.S.C. Section 2410, which pertains to an action realist, real, which waives sovereign immunity for an action to remove a lien as a clout upon the title, partition actions, but it's, their reliance on the statute at large, they've entirely misread the relevant statute. So we would say the context shows that the, you know, Congress intended the 70, the waiver of sovereign immunity in 7426 to be limited by the statute of limitations contained in the next subsection. And the waivers of sovereign immunity are strictly construed and are jurisdictional, as the Supreme Court said, in United States v. Dom, in construing Section 6511 as jurisdictional. Breyer, can I ask you, you haven't mentioned Wong. Is that because you don't see any need for us to hold back waiting the Supreme Court's decision in that case? We would have no objection to this Court's waiting until the Wong decision comes out to decide this case. It might make good sense for this Court to do so. Okay. And why? That's what I was hoping you could explain. If you think there's a reason for us to wait. Well, I must confess not to have read the Supreme Court briefs on the subject. So I can't elucidate it, but. You mean you've not read the briefs filed in the Supreme Court on another case involving another statute? I plead guilty as charged. I must say that in Wong, this Court, when it was dealing with the Irwin presumption, this Court specifically distinguished the Brock Camp case, and it said, you know, it distinguished it as pertaining to tax collection, and noting that in the Federal Tort Claims Act, the Congress has specifically tried to treat claims against the state government just like claims against private parties, and it specifically distinguished Brock Camp. So we would say that even if this Court chooses not to wait until the decision in Wong v. Beebe, there is ample ground first to holding that the statute in this question is jurisdictional, it's absolute in its terms, and in the alternative, and in fact, if this Court holds otherwise, it would be in direct conflict with the Third Circuit and Becton Dickinson, and this Court, I think, is perhaps hesitant to create a direct conflict, which would be. Well, anyway, it's our position the decision below should be affirmed. Thank you. Thank you. Just five points in reply, if I may. First, just by way of correction on the enacting legislation, my friend says we've misread the statutes at large. That's simply incorrect. Title I of the Federal Tax Lien Act of 1966 creates substantive remedies, including the wrongful levy remedy and the accompanying statute of limitation. Title II is titled Consent of the United States to be sued in actions affecting property in which it has a lien of interest. Section 202 of that at 80 Stat. 1148 provides for jurisdiction and venue in certain actions against the U.S., creating jurisdiction. Section 1346e, pardon me, of Title 28, which creates jurisdiction for actions under Section 7426. So, and I think that the separate placement of the jurisdictional provision in a separate title as part of the waiver of sovereign immunity is, in fact, one of the many factors that the Court has looked at to determine that a statute is not jurisdictional, most notably in Henderson. So that weighs against the government's position. Second, my friend spent a long time discussing what Congress could have done to allow for equitable tolling, including after Brokamp, when it superseded the Court's decision with respect to the type of tolling at issue there. If that argument were correct, that would flip the Irwin presumption entirely. The presumption runs in the other direction. Congress is presumed to intend tolling to apply. And then as the Court said in Irwin, Congress may say otherwise if it wishes. So to say that because Congress has sometimes provided tolling under some statutes, it therefore needs to provide it under all gets it exactly backwards. With respect to another exception in the application, and I'm not going to hazard doing the Latin correctly, but the principle that by saying one thing, Congress didn't intend it elsewhere, the Court rejected exactly that argument in Holland. The Court said where there is a special need for an exception, such as to allow for exhaustion, in Holland it was for exhaustion of state post-conviction remedies, that avoids any temptation to apply the maxim of expressio uneus because that's not a reason to think Congress didn't intend tolling to apply for any external circumstances. Again, we start with the presumption that Congress does want tolling to apply. If Congress creates tolling grounds involving other circumstances that suggests it intended a finite list, then there's reason to infer that it didn't want broad tolling. But that's not what we have here when you just have an exhaustion principle. And I guess the last point that I'll make is my friend cites John R. Sand as a case that somehow rises to the Miller-Vigani level of being clearly reconcilable with this Court's decisions. That can't be correct because John R. Sand itself reconciles its holding with Irwin. The Court says we understand that what we're doing here creates some anomaly with Irwin, but we're dealing with a different statute, one with this long history, and so as a matter of statutory stare decisis, it's more important that we adhere to our past precedent, notwithstanding any inconsistency that this may create across statutes. Here, capital tracing and supermail cargo are straightforward applications of Irwin, so there's no inconsistency there at all. And the language that my friend cites from John R. Sand is language from the exposition in that case discussing the fact that some statutes of limitations are not tollable. That's certainly true. Some of them are jurisdictional. Some have been labeled jurisdictional prior to Kontrick in 2004, when the Court might not do that now. But in either of that, that's an unquestioned truth that some statutes aren't tollable. The question is whether the one in John R. Sand was, and the Court said no as a matter of stare decisis. Here, the question, whether this one is, begins with the Irwin presumption exactly as this Court did in John R. Sand. If there are no further questions, we ask that the judgment be reversed and the case remanded for further proceedings. Okay. Thank you very much. Thank you. Before we submit, I would like to thank Mr. Goldman and the Oreck firm for taking on this case pro bono. The work that pro bono firms do in these cases is very useful to us, and you've done a very nice job. You have, too, but you're getting paid. The opportunity. Thank you. The case is submitted.
judges: Duffy, Fletcher, Watford